## THE PILOT.

### UNITED STATES v. THE PILOT.

*(District Court, D. Washington, N. D.  October 30, 1891.)*

FOREIGN WATERS—TOWAGE—FOREIGN TUG-BOATS.

The boundary between the United States and Great Britain in the Strait of Juan de Fuca is fixed by treaty on a line following the middle of the strait, the northern part of the strait being British water, the southern, American; but by the same treaty the entire strait is free and open to both countries for purposes of navigation. *Held,* that no part of the strait is "foreign waters," within Rev. St. U. S. § 4370, which excepts, from the penalty therein denounced against foreign tug-boats towing United States vessels between domestic ports, cases where the towing is in whole or in part on foreign waters.

In Admiralty.  On libel to enforce a penalty.

*P. H. Winston,* U. S. Atty.

*Burke, Shepard & Woods,* for claimant.

HANFORD, J.  This is a case of seizure to enforce a penalty imposed by section 4370, Rev. St. U. S.  The facts are as follows:  The Pilot is a British steam-tug, engaged in the business of towing upon the Strait of Juan de Fuca and other waters of this state and British Columbia.  The bark Valley Forge is an American enrolled vessel of 1,286 tons burden, engaged in coastwise trade; and, being bound on a voyage from San Francisco to Port Angeles, entered the strait without assistance, and was beating against a headwind towards her port and destination.  The Pilot found her on the north side of the strait, and within three miles of the shore of Vancouver island, near Port San Juan, where she had sailed upon her port tack, and towed her across the strait to Port Angeles, pursuant to a contract made with her master at the time to tow the Valley Forge first to Port Angeles; thence to Departure bay, in British Columbia, to load; and thence to sea.  The Valley Forge remained at Port Angeles while her master went to the custom-house at Port Townsend for the purpose of exchanging her certificate of enrollment for a register, to entitle her to clear for a foreign port, and she was afterwards towed from Port Angeles to Departure bay by a British tug, under the contract made with the master of the Pilot.  Section 4370, Rev. St., is the same as the twenty-first section of the act of July 18, 1866, entitled "An act to prevent smuggling, and for other purposes."  14 St. at Large, 183, as amended by the act of 1867, found on page 410 of the same volume. It reads as follows:

"Sec. 4370.  All steam tug-boats, not of the United States, found employed in towing documented vessels of the United States plying from one port or place in the same to another, shall be liable to a penalty of fifty cents per ton on the measurement of every such vessel so towed by them respectively, which sum may be recovered by way of libel or suit.  This section shall not apply to any case where the towing in whole or in part is within or upon foreign waters."

Originally the section contained no exceptions. The last clause was added by the amendatory act. The exact question now presented for decision is this: Does the mere fact that a vessel, in making a passage of the strait, crosses the international boundary line, legalize a towage service which would be a violation of section 4370 if performed wholly on the American side? This strait is an arm of the sea, wholly within the jurisdiction of the United States and Great Britain, as part of the territory of the two countries, and is not, like the open ocean, a free highway for the ships of all nations. By treaty stipulations the boundary between the two countries is upon a line following the middle of the strait, and all that part of it north of the middle is British water, and all south of the line is American water. But by the treaty the entire strait is free and open to both countries for purposes of navigation, so that the vessels of each are free to sail anywhere in the strait, upon either side of the line. It is my opinion that, while this treaty remains, no part of the strait can be regarded as foreign waters to either American or British vessels, (*The Apollon*, 9 Wheat. 362;) and further, that the term "foreign waters," as used in section 4370, means water under the exclusive dominion of a foreign government for all purposes. My conclusion is that foreign tugs are not privileged to tow American vessels bound from one American port to another on either side of the strait, and that a penalty has been incurred by the tug Pilot as charged in the libel in this case.